**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re:<br><br>BARRY WISNER CHAPIN<br><br>Debtor. | )<br>)<br>)  Chapter 7<br>)<br>)  Case No. 20-10324 JEB<br>)<br>)<br>) |

**MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER AUTHORIZING THE SALE OF REAL PROPERTY BY PRIVATE SALE, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**
*(225 NE 1st Street, No. 406, Delray Beach, Florida)*

Harold B. Murphy as he is the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Barry Wisner Chapin (the "Debtor" or "Chapin"), respectfully requests authority to sell by private sale ("Private Sale") all of the Estate's right, title, and interest in certain real property located at 225 NE 1st Street, No. 406, Delray Beach, Florida, as further described herein (the "Real Property") to Richard and Julie Simon or their nominee ("Purchasers") for the sum of $652,000 ("Purchase Price").  The terms of the Private Sale are more particularly described below, and are set forth in their entirety in the Purchase and Sale Agreement (the "Sale Agreement") attached as Exhibit A.[1]

As part of the relief requested herein, the Trustee requests that the Court set deadlines for counteroffers and objections by no later than May 18, 2020 and a hearing on the proposed sale by no later than May 22, 2020 as is convenient to the Court's calendar, such that the Private Sale can close on or about May 29, 2020. The Real Property has been extensively marketed, the proposed deadlines are consistent with the notice requirements of Fed.R. Bankr.P. 2002(a), and a

---

[1] To the extent of any inconsistency between this motion and the Sale Agreement, the terms of the Sale Agreement shall govern.

1

closing by May 29, 2020 will limit the accrual of costs and expenses that must be paid from the proceeds of the Real Property, to the benefit of the Estate.

In further support of this motion (the "Sale Motion"), the Trustee states as follows:

### I. Background

1. On February 4, 2020 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code.

2. The Trustee is the duly appointed Chapter 7 Trustee of the Debtor.

3. The Debtor owns or owned multiple properties in Massachusetts and in Florida. The Internal Revenue Service asserts liens on all of the Debtor's real properties. The Massachusetts Department of Revenue asserts liens on the Debtor's properties in Massachusetts. In the ninety days prior to the Petition Date, Ferris Development Group, LLC ("Ferris") obtained liens on the Debtor's real properties in Massachusetts by recording mortgages.

4. On April 10, 2020, the Trustee filed the Complaint [doc.no. 54] (the "Complaint") commencing an adversary proceeding and seeking, among other things: (i) pursuant to the equitable doctrine of marshalling, to compel the Internal Revenue Service and the Massachusetts Department of Revenue to marshal by enforcing their respective liens against the Debtor's real property located at 34 Fairfield Street, Apartment 2, Boston, Massachusetts (the "Fairfield Property"), so as to maximize the value of the Estate's interest in the Debtor's remaining properties; and (ii) to avoid the mortgages granted by the Debtor to Ferris on each of his properties as preferential pursuant to 11 U.S.C. § 547 while preserving the liens created by the mortgages for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## II. The Real Property

5. The Debtor is the owner of the Real Property, which consists of a certain condominium unit in Astor Condominiums identified as 225 NE 1st Street, No. 406, Delray Beach, Florida.

6. Pursuant to the order of the Probate and Family Court dated March 13, 2012 (the "Probate Court Order") incorporating the separation agreement between the Debtor and Claire Chapin ("Ms. Chapin") his ex-spouse, the Debtor retained the Real Property as his sole property, free and clear of any right, title and interest of Ms. Chapin. Also pursuant to the Probate Court Order, the Debtor was to refinance the mortgage on the Astor Unit into his individual name and his ex-wife was to execute a deed conveying the Astor Unit to the Debtor. This has not yet occurred, and as such, the Debtor's ex-spouse remains on the title.

7. On or about April 14, 2020, the Trustee filed an application to retain Catherine McGlennon and Engel & Vokers (the "Broker") to assist in the marketing and sale of the Real Property. The Broker has been marketing the Real Property for sale on behalf of the Debtor since approximately October of 2019.

## III. Terms of Proposed Private Sale

8. Pursuant to this Sale Motion, the Trustee seeks Court approval to sell all of the Estate's right, title, and interest in and to the Real Property to the Purchasers.

9. The deed to the Purchaser shall convey title to the Real Property, free and clear of any liens, claims, encumbrances and interests.

10. In accordance with the terms of the Sale Agreement, the Purchasers shall pay to the Trustee on the closing date, which is to occur within five days following Court approval of the sale, or earlier if agreed to by the parties (the "Closing Date"), the Purchase Price for the Real Property, in the amount of $652,000, payable as follows:

3

    (i)    $25,000.00 paid as a deposit;

    (ii)    $627,000.00[2] at the time of delivery of the deed.

11.    The sale is not subject to any financing contingency.

12.    Because the Debtor's ex-wife, Claire Chapin, remains on the title of the Real Property despite the terms of the Probate Court Order, she has signed the Sale Agreement and has agreed to sign the deed to the Property.

13.    Pursuant to the Sale Agreement, the Real Property is to be sold in "as is" and "where is" condition. Further, the Trustee is not making any representations or warranties whatsoever, either express or implied, with respect to the Real Property.

### IV.    Relief Requested

14.    By this motion, the Trustee seeks authority to sell, subject to counteroffers, the Real Property in accordance with Section 363 of the Bankruptcy Code on the terms and conditions as set forth in the Sale Agreement. Also as part of the relief requested herein, the Trustee requests that the Court set deadlines for counteroffers and objections by no later than May 18, 2020 and a hearing on the proposed sale by no later than May 22, 2020, such that the proposed sale with the Purchasers can close on or before May 29, 2020.

#### A.    Approval of the Sale is in the Best Interest of the Estate.

15.    The Bankruptcy Code provides that a trustee or debtor-in-possession "after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Bankruptcy courts have approved the disposition of debtors' assets pursuant to Section 363(b) where the transactions represent the exercise of reasonable business judgment. *See In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996); *In re Lionel Corp.*, 722

---

[2] Julie Simon, who is a real estate broker and one of the Purchasers, acted as the broker for the Purchasers and is receiving a commission of 2 1/2 % of the Purchase Price as a credit to the Purchase Price.

4

F.2d 1063, 1070 (2d Cir. 1983); *see also Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Thomas McKinnon Securities, Inc.*, 120 B.R 301 (Bankr. S.D.N.Y. 1990); *In re Coastal Indus., Inc.*, 63 B.R 361,367 (Bankr. N.D. Ohio 1986); *In re Baldwin United Corp.*, 43 B.R 888 (Bankr. S.D. Ohio 1984).

16. The Trustee has concluded in his business judgment that the proposed sale of the Real Property to the Purchasers is necessary, is in the best interests of the Estate and its creditors, and will result in the best available value for the Real Property.

17. The terms of the Sale Agreement are fair and reasonable, and the Trustee believes that a sale of the Real Property through the Private Sale will yield the maximum value. The Private Sale was actively marketed by the Broker, who is a well-known broker of high end properties. The Broker received three additional offers to purchase the Real Property. The offer submitted by the Purchasers represents the highest and best offer received for the Real Property.

18. As is discussed below, the Trustee has the authority to convey the Estate's interest in the Real Property to the Purchasers free and clear of liens, claims, and encumbrances. The sale of the Real Property is anticipated to generate substantial unencumbered funds to the benefit of the Estate.

19. For the foregoing reasons, approval of the proposed Private Sale of the Real Property is warranted. *See In re Martin*, 91 F.3d 389, 396; *In re Lionel Corp.*, 722 F.2d 1063, 1070.

**B.    Sale Of Real Property Free and Clear of Liens, Claims, Interests**

20. Pursuant to Section 363 of the Bankruptcy Code, the Trustee requests authority to sell the Estate's interest in the Real Property free and clear of all liens, claims, interests, and encumbrances whatsoever, known and unknown, including without limitation liens, claims, interests, and encumbrances held by any of the Debtor's creditors. Any and all liens, claims,

encumbrances, and interests shall attach to the proceeds subject to subsequent determination regarding the validity, priority, and extent of such rights.

21. Upon information and belief, the Real Property is encumbered as follows:

    a. Astor Condominium Assoc. ........................................$3,496.24

    b. Columbus BB &T /Synovus Bank...........................$281,988.00

    c. Internal Revenue Service ........................................$350,032.50

    d. Ferris ....................................................................$61,571.28

22. As is set forth above, the Trustee has filed the Complaint seeking, among other things, to require the Internal Revenue Service to marshall against the Fairfield Property, and to avoid the mortgage of Ferris as preferential.

23. Section 363(f) of the Bankruptcy Code provides that the Debtor may sell property free and clear of liens, claims and encumbrances if one of the following conditions is satisfied:

    a. Applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

    b. the lienholder or claimholder consents;

    c. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d. such interest is in a bona fide dispute; or

    e. the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest

24. A sale free and clear of a disputed interest in a debtor's assets "is expressly permitted under 11 U.S.C. §364(f)(4)" where the asserted interest is in *bona fide* dispute. *In re Genesys Research Inst., Inc.*, 2016 B.R. LEXIS 2376 at *65 (Bankr. D. Mass., June 24, 2016) citing *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001); *In re Pierce*, 384

6

B.R. 477 (Bankr. S.D. Ohio 2008; *In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1991) (internal citations omitted). A "bona fide dispute" under Section 363(f)(4) means that "there is an objective basis – either in law or fact – to cast doubt on the validity of" of such asserted interest. *In re Revel AC, Inc.*, 802 F.3d 558, 573 (3d Cir. 2015).

25. The Complaint filed by the Trustee with respect to the IRS lien and the Ferris mortgage asserted against the Real Property evidences that a *bona fide* dispute exists with respect to these liens. There is an objective basis sufficient under the facts and circumstances of the case for the Court to determine that a *bona fide* dispute exists as to the Internal Revenue Service's and Ferris' asserted interest in the Real Property. *Genesys Research Inst., Inc.*, *supra* at *69, 73 *quoting In re Robotic Vision Sys., Inc.*, 322 B.R. 502, 506 (Bankr. D.N.H. 2005). Accordingly, the Trustee may sell the Real Property to the Purchasers free and clear of the liens of the Internal Revenue Service and Ferris. *See e.g. In re Revel AC, Inc.*, *supra*.[3]

26. After payment to of the costs of sale, including payment of commissions to real estate brokers, ordinary and usual closing costs, condominium fees, real estate taxes and the holder of the first mortgage, the Trustee proposes to hold the balance of the proceeds in escrow pending the resolution of the relief sought in the Complaint.

### C. Requested Dates for Counteroffers, Objections and Hearing

27. The Trustee further requests that the Court set a deadlines for counteroffers and objections to the proposed Private Sale of no later than May 18, 2020 and a hearing on the proposed sale by no later than May 22, 2020, such that the proposed sale with the Purchasers can close on or before May 29, 2020.

28. As is set forth herein, the Real Property has been extensively marketed, the proposed deadlines are consistent with the notice requirements of Fed.R. Bankr.P. 2002(a), and a

---

[3] Nothing in this motion shall be deemed to be an acknowledgment by the Trusteeas to the validity priority or enforceability of any asserted liens, claims, interests or encumbrances.

closing by May 29, 2020 will limit the accrual of costs and expenses, such as utilities, accruing debt service and condominium fees that must be paid from the proceeds of the Real Property, to the benefit of the Estate.

### V.     Bidding and Counteroffer Procedures

29.     Approval of the Private Sale is subject to the submission of higher and better offers. Any and all counteroffers must be in an amount not less than five percent (5%) greater than the Purchase Price, or $684,600.

30.     All counteroffers must be accompanied by a deposit equal to $25,000 ("Deposit") in the form of a certified or bank check, wire transfer, or cash, and made payable to the Trustee. Counteroffers must include an executed purchase and sale agreement upon terms substantially consistent with the terms of the Sale Agreement. Counteroffers shall not be subject to further due diligence and may not contain any other conditions precedent to the consummation of the sale other than those provided in the Sale Agreement.

31.     In the event of a timely counteroffer, each interested bidder shall have an opportunity to participate in an auction before the Court, upon procedures as approved by the Court.

32.     Any competing bidder shall demonstrate to the Trustee's reasonable satisfaction that it is financially able to consummate the sale.

33.     The Trustee requests that the Deposit submitted by the highest bidder be forfeited to the Estate if the highest bidder fails to complete the sale by the date ordered by the Court.

34.     The Trustee further requests that, if the sale of the Real Property is not completed by the highest bidder, the Court authorize the sale of the Real Property to the next highest bidder.

## VI.    Good Faith Protections under Section 363(m)

35. Because the Private Sale will effectuate transfer of the Real Property following a public and transparent sale process, any purchaser of the Real Estate is entitled to the protections of Section 363(m) of the Bankruptcy Code which provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b)…of this section of a sale…of property does not affect the validity of a sale …under such authorization to an entity that purchased…such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale…were stayed pending appeal.

11 U.S.C. § 363(m).

36. Courts have defined a "good faith purchaser" as "one who buys property in good faith and for value, without knowledge of adverse claims." *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993). "Good faith" is a lack of "fraud, collusion…or an attempt to take grossly unfair advantage of other bidders." *Id.* (*citing In re Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Tri-Cran, Inc.*, 98 B.R. 609, 618 (Bankr. D. Mass. 1989) (*quoting Rock Indus. Machinery Corp.*, 572 F.2d at 1198 (7th Cir. 1978)).

37. The Purchasers are arms' length purchasers who are not related to the Debtor. The Real Property was subject to a transparent marketing and sale process during which the Real Estate has been made available to any prospective purchaser and advertised to attract buyers. The Private Sale will be noticed to all parties in interest. The Trustee submits that such notice is adequate and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code. Under the circumstances, the purchaser of the Real Property should be afforded the benefits and protections that Section 363(m) of the Bankruptcy Code provides.

### VII. Waiver of Provisions of Fed. R. Bankr. P. 6004

38. In order to provide for a closing on the sale of the Real Property as soon as practicable and to avoid the continued accrual of costs associated with the Real Property, including amounts owed on the first mortgage, condominium fees and utilities, the Trustee requests that the Court waive the automatic stay provisions of Fed. R. Bankr. P. 6004(h) with respect to the Private Sale.

### VIII. Notice

39. The Trustee has filed a form of proposed Notice of Intended Private Sale ("Notice") providing for the terms of sale, sale procedures, and other relevant information. The Trustee believes that the Notice provides necessary information respecting the sale and the means for obtaining additional information. The Notice is attached as Exhibit "B".

40. Additional information respecting the terms of the sale, objection and counteroffer procedures, is disclosed in the proposed Notice.

### IX. Distribution of Sale Proceeds

41. By this motion, the Trustee requests authority to pay all costs of sale including broker's commissions, condominium fees, real estate taxes and customary closing costs and expenses.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an Order:

(A) Pursuant to 11 U.S.C. § 363, approving this Sale Motion and authorizing the Trustee to sell the Estate's interest in the Real Property to the Purchasers subject to the terms and conditions set forth in the Sale Agreement, free and clear of liens, claims, encumbrances and interest, with such liens, claims, encumbrances, and interests to attach to the proceeds of the sale to the extent of their validity, perfection and priority;

  (B) Setting deadlines for counteroffers and objections with respect to the Private Sale for no later than May 18, 2020 and a hearing on the proposed sale by no later than May 22, 2020 as is convenient to the Court's calendar, such that the Private Sale can close on or about May 29, 2020;

  (C) Approving the form of the proposed Notice;

  (D) Approving the sale of the Real Property to the next highest bidder, if the sale is not completed by the highest bidder;

  (E) Authorizing the Trustee to pay ordinary and usual closing costs associated with the sale of the Real Property as set forth herein, with such amounts to be paid from the net proceeds of the sale;

  (F) Waiving the automatic stay provisions of Fed. R. Bankr. P. 6004(h) with respect to the Private Sale; and

  (F) Granting such other and further relief as this Court deems just and proper.

           Respectfully Submitted,

           HAROLD B. MURPHY,
           Chapter 7 Trustee
           By his counsel,

           /s/ Kathleen R. *Cruickshank*
           Harold B. Murphy (BBO #326610)
           MURPHY & KING, Professional Corporation
           One Beacon Street
           Boston, Massachusetts  02108-3107
           Tel: (617) 423-0400
Dated: April 10, 2020       Email: KCruickshank@murphyking.com